UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

JAVIER PENDLEY, CORRINE PRINCE

                                PLAINTIFFS

         -against-

THE CITY OF NEW YORK, DETECTIVE WALIUR
RAHMAN, SHIELD #6428, DETECTIVE STEVE
LAFORTUNE, SHIELD #2570

                           DEFENDANTS
------------------------------------------------------------------------- x

COMPLAINT AND JURY
DEMAND

Docket No.:

Plaintiffs Javier Pendley and Corrine Prince, by their attorney, Stoll, Glickman & Bellina, LLP, allege:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which Plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights.

2.    The claim arises from a May 8, 2014 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of law, intentionally and willfully subjected plaintiffs to, among other things, false arrest, excessive force, and unlawful entry into their home.

3.    Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of

New York.

5.  The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

VENUE

6.  Venue is laid within the Eastern District of New York because Defendant City of New York is located, and a substantial part of the events giving rise to the claim occurred, within the boundaries of the Eastern District.

PARTIES

7.  Plaintiffs Javier Pendley and Corrine Prince are residents of Kings County in New York State.

8.  The City of New York ("the City") is a municipal corporation organized under the laws of the State of New York.  At all times here relevant, the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, the City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9.  Defendant Detectives Waliur Rahman and Steve Lafortune were at all times here relevant police officers of the NYPD, and as such were acting in the capacity of an agents, servants and employees of the City of New York. On information and belief, at all times here relevant, defendant detectives were involved in the decision to illegally enter Plaintiffs' home and to use excessive force against Plaintiff Pendley.  The defendant detectives are sued in their individual capacities.

10.   At all times here mentioned, defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11.   On May 8, 2014, at approximately 3:15 pm, Plaintiffs Pendley and Prince were in their home located at 1263 Lincoln Place, Apartment 3L, when Plaintiff Pendley heard banging on the door to his apartment.  Plaintiff Prince was asleep in a bedroom.

12.   Plaintiff Pendley unlocked and opened the door slightly, just enough to be able to see Detective Rahman.  Plaintiff Pendley was not holding contraband in his hand and the door was not wide open.  Detective Rahman punched Mr. Pendley in the face and forcibly entered apartment 3L.

13.   Without Mr. Pendley's consent, more NYPD officers in plainclothes, including Defendant Detective Lafortune, unlawfully enter Plaintiffs' apartment and searched it.

14.   No contraband was in plain view in the apartment, Plaintiffs had not consented to the search of their home, no warrant permitting the search had been issued, and defendants had no lawful authority to enter Plaintiffs' home.

15.   Criminal charges were dismissed against Mr. Pendley after a suppression hearing in which the court discredited Detective Rahman's explanation for why he entered plaintiffs' apartment.

16.   At all times during the events described above, the defendant detectives were engaged in a joint venture and formed an agreement to violate Plaintiffs' rights.  The individual detectives assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiffs.

17.   During all of the events above described, defendants acted maliciously and with intent to injure Plaintiffs.

DAMAGES

18.   As a direct and proximate result of the acts of defendants, Plaintiff(s) suffered the following injuries and damages:

    a.   Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution;

    c.   Loss of liberty;

    d.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    e.   Physical pain and suffering and

    f.   Invasion of plaintiffs' privacy.

**FIRST CAUSE OF ACTION- AS TO JAVIER PENDLEY ONLY**
**(42 USC § 1983 – EXCESSIVE FORCE)**

19.   The above paragraphs are here incorporated by reference.

20.   Defendants acted under color of law and conspired to deprive Plaintiff Pendley of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, specifically, Plaintiff's right to be free from use of excessive force, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to Plaintiff under 42 U.S.C. §1983.

21.   Defendant Detective Rahman used excessive force when he assaulted Plaintiff Pendley in the course of defendants' illegal entry into Plaintiffs' home.  Plaintiff complied with all of defendants' commands during the arrest, and did not in any way resist or fight with defendants.

22.   Plaintiff was seriously physically injured and has been damaged as a result of

defendants' wrongful acts.

**SECOND CAUSE OF ACTION- AS TO BOTH PLAINTIFFS**
(42 USC § 1983 – FALSE ARREST)

23.    The above paragraphs are here incorporated by reference.

24.    Defendants acted under color of law and deprived Plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure, specifically, Plaintiffs' right to be free from being arrested without a warrant or probable cause that they committed a crime, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to Plaintiff under 42 U.S.C. §1983.

25.    Defendants arrested plaintiffs unlawfully when they seized them without legal privilege to do so, prior to discovering any evidence that plaintiffs had committed any crime.  Plaintiffs did not consent to their confinement and were conscious of it.

26.    Plaintiffs were damaged as a result of defendants' wrongful acts.

**THIRD CAUSE OF ACTION- AS TO BOTH PLAINTIFFS**
(42 USC § 1983 – UNLAWFUL ENTRY OF HOME)

27.    The above paragraphs are here incorporated by reference.

28.    By unlawfully and coercively entering Plaintiffs' home and failing to intervene in each other's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including rights guaranteed by the Fourth Amendment to the United States Constitution.

29.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiffs were damaged.

## FOURTH CAUSE OF ACTION- AS TO BOTH PLAINTIFFS
(MUNICIPAL AND SUPERVISORY LIABILITY)

30.   The above paragraphs are here incorporated by reference.

31.   The City is liable for the damages suffered by plaintiffs as a result of the conduct of its employees, agents, and servants, in that, after learning of defendants' violation of paiuntiffs' constitutional rights, it failed to remedy the wrong; it has created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and it has been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

32.   The City knew, through prior uses of force and prior lawsuits alleging excessive force and false arrests, that the officers were likely to cause harm to the constitutional rights of people in plaintiffs' position. For example, the City knew, or had reason to know, of numerous lawsuits filed against Detectives Rahman and Lafortune, such as *Freeman v. City of New York, et al.*, 15-cv-06097 (JBW) (CLP) (E.D.N.Y) (alleging use of excessive force by Detective Rahman), *Covington v. City of New York, et al.*, 15-cv-05329 (JBW) (RML) (E.D.N.Y.) (alleging use of excessive force by Detective Rahman), *Nelson, et al. v. Rahman, et al.*, 15-cv-04988 (KAM) (PK) (E.D.N.Y.) (alleging unlawful entry, false arrest, and use of excessive force by Detective Rahman), *Charles v. City of New York, et al.*, 15-cv-04510 (LDH) (LB) (E.D.N.Y.) (alleging false arrest by Detective Rahman), *Legrand v. Rahman, et al.*, 15-cv-02906 (PKC) (RML) (E.D.N.Y.) (alleging unlawful search, false arrest, and use of excessive force by Detective

Rahman), *Daniels v. Lallave, et al.*, 14-cv-06510 (PKC) (RML) (E.D.N.Y.) (alleging false arrest by Detective Rahman), *Fletcher, et al. v. City of New York, et al.*, 14-cv-03546 (RJD) (JO) (E.D.N.Y.)  (alleging unlawful search, false arrest, and use of excessive force by Detective Rahman), *Walkin, et al. v. City of New York, et al.*, 14-cv-01424 (KAM) (RER) (E.D.N.Y.) (alleging unlawful entry and false arrest by Detectives Rahman and Lafortune), *Sapp v. Lafortune, et al.*, 14-cv-00923 (RJD) (VVP) (E.D.N.Y.) (alleging unlawful entry, false arrest, and use of excessive force by Detective Lafortune), *Robinson, et al. v. City of New York, et al.*, 14-cv-00751 (BMC) (E.D.N.Y.) (alleging false arrest by Detective Lafortune), *Legrand v. Costin, et al.*, 14-cv-00348 (SJ) (SMG) (E.D.N.Y.) (alleging unlawful search, false arrest, and use of excessive force by Detective Rahman), *Blackett v. City of New York, et al.*, 13-cv-07219 (FB) (LB) (E.D.N.Y.) (alleging false arrest, use of excessive force, and trespass by Detective Lafortune), *Davis v. City of New York, et al.*, 13-cv-06260 (RML) (E.D.N.Y.) (alleging unlawful search by Detective Lafortune), *Harkless v. City of New York, et al.*, 13-cv-03347 (JG) (RML) (E.D.N.Y.) (alleging false arrest and unlawful search by Detective Lafortune), *Gore, et al. v. City of New York, et al.*, 13-cv-01613 (ERK) (CLP) (E.D.N.Y.) (alleging false arrest by Detective Rahman), *Young v. City of New York, et al.*, 12-cv-04190 (WFK) (RER) (E.D.N.Y.) (alleging wrongful death as a result of the violation of decedent's rights by Detective Rahman), *Calhoun v. City of New York, et al.*, 12-cv-03489 (ARR) (VMS) (alleging false arrest by Detective Rahman), *Hampton v. City of New York, et al.*, 11-cv-02084 (ENV) (SMG) (E.D.N.Y.) (alleging false arrest, illegal search, and use of excessive force by Detective Lafortune), *Cain v. City of New York, et al.*, 10-cv-00529 (JSR) (S.D.N.Y.) (alleging false arrest, illegal search, and use of excessive force by Detective Rahman), *Camacho v. City of New York, et al.*, 09-cv-04461 (RJD) (VVP) (E.D.N.Y.) (alleging false arrest by Detective Rahman), *Johnson v. City of New York, et*

*al.*, 09-cv-03534 (ARR) (JMA) (E.D.N.Y.) (alleging false arrest against Detective Rahman), *Walker v. City of New York, et al.*, 09-cv-02519 (NGG) (RML) (E.D.N.Y.) (alleging false arrest and use of excessive force by Detective Rahman), *James v. City of New York, et al.*, 08-cv-03307 (JG) (LB) (E.D.N.Y.) (alleging violation of plaintiff's rights by Detective Rahman), *Ferdinand v. City of New York, et al.*, 07-cv-08542 (RMB) (S.D.N.Y.) (alleging illegal search and use of excessive force by Detective Rahman), *Wilson v. City of New York, et al.*, 07-cv-01948 (CBA) (SMG) (E.D.N.Y.) (alleging false arrest by Detective Rahman), and *Hicks, et al. v. City of New York, et al.*, 06-cv-02044 (E.D.N.Y.) (CPS) (RML) (alleging illegal entry and false arrest by Detective Rahman). The City has settled lawsuits against Detective Rahman for a total of over $1,559,500. Given the number of lawsuits filed against Detective Rahman and the amount paid to settle these cases, Detective Rahman would likely place among the top four most frequently sued police officers in New York City[1].

33. The City's continuing, knowing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts.

34. The number of claims against the NYPD doubled between 2004 and 2014, to a record high of 9,570 lawsuits filed in 2012. The suits cost taxpayers more than $1 billion dollars during that time period.[2]

---

[1] "Meet the NYPD Officers with the Most Lawsuits Over the Past Decade," by Ryan Sit, Barry Paddock, Dareh Gregorian, and John Marzulli, http://www.nydailynews.com/new-york/meet-nypd-4-sued-officers-decade-article-1.1616033, February 16, 2014, last visited on June 20, 2016.

[2] Barry Paddock, Rocco Parascandola, John Marzulli, & Dareh Gregorian, *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE; *see also* Colleen Long & Jennifer Peltz, Associated Press, *Nearly $1B in NYC police payouts*, Yahoo! News (October 14, 2010, 7:44 PM), http://news.yahoo.com/ap-investigation-nearly-1b-nyc-police-payouts.html (reporting that, in the decade ending in 2010, the City paid out nearly one billion dollars to resolve claims against the NYPD).

35.    From 2009-2014, New York City paid out more nearly $500 million to settle NYPD-related cases.[3]  In fiscal year 2012, so-called "police action claims," which are claims that result from false arrest or imprisonment, police shootings, excessive use of force, assault, or failure to protect, cost the City $64.4 million.[4]  In fiscal year 2011, the City paid $60.2 million in police action claims.[5]

36.    The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

37.    However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying without consideration officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police

---

[3] Caroline Bankoff, *The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements Over the Past 5 Years*, NYMag.com, Oct. 12, 2014, http://nymag.com/daily/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html.

[4] City of New York, Office of the Comptroller Claims Report FY 2012, 30, June 4, 2013, https://www.documentcloud.org/documents/1375759-fy-2012-claims-report.html.

[5] *Id.*

officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

38.   In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.   This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold individual officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

39.   The event underlying plaintiffs' factual allegations was not an isolated incident.   The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.   Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

40.   The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports,

and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

41.  Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, and towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiffs.

42.  Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility for the lawsuit liability, even after multiple lawsuits.

43.  The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.

44.  The NYPD, once receiving a substantiated complaint by the CCRB, routinely fails to adequately discipline officers for misconduct.  Even as focus on police misconduct has increased

in recent years, and new leadership has promised sweeping operational changes, the NYPD still routinely fails to discipline its officers. According to a study conducted by the WNYC, in 2012, police officers received no discipline in 104 cases (40.3%) of the substantiated complaints processed (258).[6] In 2013, the NYPD dropped 28.3% of the substantiated complaints without any disciplinary action.[7] In 2014, it dropped 24.5%.[8]

45.    Due to the continuing failures of the CCRB, many abuses of authority by police officers go unreported. Even when abuse is reported, police officers rarely, if ever, are disciplined. This pattern is well-known to NYPD officers; as a result, officers feel free to abuse their authority with little or no fear of repercussions. Such lack of accountability has permitted, and even encouraged, frequent and widespread violations of the civil rights of individuals at the hands of NYPD officers. Furthermore, the lack of accountability contributed to the defendant police officers' actions described above in that the officer defendants felt insulated from any repercussions for their actions regarding the Plaintiff.

46.    The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provides so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite a superficially

---

[6] WNYC, *Police Punishment: CCRB vs NYPD*, http://project.wnyc.org/ccrb/ (last visited July 23, 2015).

[7] *Id.*

[8] *Id.*

elaborate set of oversight mechanisms.

47.   Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.   Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.   Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

48.   All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.   As the Honorable Jack Weinstein, United States District Court Judge of the Eastern District of New York, has written:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department— there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at \*2 (E.D.N.Y. Nov. 25, 2009).

49.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.   Despite such notice, the City has failed to take corrective action.   This failure and these policies caused the officers in the present case to violate Plaintiffs' civil rights, without fear of reprisal.

50.   Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, Plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.   In favor of Plaintiffs in an amount to be determined by a jury for each of Plaintiff's causes of action;

B.   Awarding Plaintiffs punitive damages in an amount to be determined by a jury;

C.   Awarding Plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.   Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:      August 1, 2016
            Brooklyn, New York

                                            Respectfully yours,

                                            By: Andrew B. Stoll
TO:    City of New York                     Stoll, Glickman & Bellina, LLP
       Corporation Counsel Office           Attorneys for Plaintiff
       100 Church Street                    475 Atlantic Avenue, 3rd Floor
       New York, NY  10007                  Brooklyn, NY  11217
                                            (718) 852-3710
       Det. Waliur Rahman, # 6428           astoll@stollglickman.com
       Narcotics Borough Brooklyn North
       1 Police Plaza Room 1100
       New York, NY  10038

       Det. Steve Lafortune, # 2570
       77th Precinct
       127 Utica Avenue
       Brooklyn, NY 11213